NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0689-13T3

CATLIN INSURANCE COMPANY,
INC.,

    Plaintiff-Respondent,

v.

FLIGHT LIGHT INC., AND
TRAFFIC SAFETY CORPORATION,

    Defendants-Appellants,

and

COUNTY OF MIDDLESEX, BOROUGH
OF METUCHEN, KRISHNA M.
VASIREDDY, ANILA K. VASIREDDY,
MANJU RAWAT, KUNDAN S. RAWAT,
FAI-GON ELECTRIC, INC., ASKCA
INC., AND CARR & DUFF, INC.,

    Defendants.

_____

Argued May 14, 2014 – Decided July 15, 2014

Before Judges Sapp-Peterson and Hoffman.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Docket No.
L-4608-12.

Kenneth W. Thomas argued the cause for
appellants (Lanza & Lanza, LLP, attorneys;
Mr. Thomas, on the brief).

Timothy G. Hourican argued the cause for
respondents (Brown Gavalas & Fromm, LLP,
attorneys; Robert J. Brown, of counsel and

on the brief; Patrick R. O'Mea, on the brief).

PER CURIAM

In this declaratory judgment action, defendants Flight Light, Inc. (Flight Light) and Traffic Safety Corporation (Traffic Safety)[1] appeal from Law Division orders granting summary judgment to plaintiff Catlin Insurance Company, Inc. (Catlin), and denying reconsideration. In granting summary judgment, the judge determined the insurance policies issued by Catlin did not require it to defend or indemnify defendants in an underlying personal injury action. For the reasons that follow, we affirm.

I.

This matter arises from an accident that occurred on December 7, 2009, when an automobile struck and injured a pedestrian as he crossed a public roadway in the Borough of Metuchen (Metuchen). The pedestrian filed a complaint seeking damages against various defendants, including Metuchen, asserting his injuries were caused, in part, by a malfunctioning

---

[1] We refer to Flight Light and Traffic Safety collectively as defendants but refer to them separately when discussing the parties to the insurance contract. Additionally, Traffic Safety is a wholly owned subsidiary of Flight Light.

in-pavement crosswalk warning system (System)[2] located at the intersection where the accident occurred. The complaint alleged the System had failed to operate properly prior to the accident, and was not repaired, thus creating a dangerous roadway condition when the System failed to alert motorists to pedestrians crossing the roadway. On March 19, 2012, Metuchen filed a third-party complaint against Traffic Safety as the manufacturer, seller and/or distributor of the allegedly defective System, seeking contribution, common law indemnification, and contractual indemnification for the claims brought by the pedestrian in the underlying action.

Upon receipt of Metuchen's third-party complaint, defendants notified Catlin and demanded coverage and indemnification for the claim. Catlin had issued two insurance policies to Flight Light for the policy period beginning on August 21, 2009 and ending on August 21, 2010: an "Aviation Products Liability Policy" (Aviation Products Policy), and a "Commercial General Liability Aviation Insurance Policy (CGL Aviation Policy). The policies were issued through Catlin's agent, W. Brown & Associates Insurance Services.

On April 23, 2012, Catlin issued a reservation of rights letter to Flight Light advising that the claims asserted against

---

[2] The System consists of flashing lights embedded in a crosswalk and pedestrian activation control stanchions.

Flight Light in the underlying lawsuit may not be covered under the Aviation Products Policy as its "investigation and the allegations in the complaint and third-party complaint indicate that this particular application did not involve aircraft, airports, heliports, or aviation." Nevertheless, Catlin advised that it would "provide a defense to defendants, . . . reserving all of its rights to seek a determination of coverage under all of the provisions in the policy contract."

On July 3, 2012, Catlin filed a declaratory judgment action seeking a determination that defendants are not entitled to insurance coverage under either of the two policies issued to Flight Light for the third-party claims asserted in the underlying action. Defendants filed an answer and counterclaim seeking a declaration of coverage for the underlying action.

The Aviation Products Policy, which only names Flight Light as an insured, includes "any partner, executive officer, employee, director or stockholder thereof, while acting within the scope of his duty as such" within the definition of insured; notably, this definition does not include separate companies or affiliates of the named insured. The contractual language states the policy only covers claims arising from the handling or use of Flight Light's aircraft products, items used in connection with an aircraft.

4                                          A-0689-13T3

This specific policy insures bodily injury arising out of a "Products Hazard," which is defined as the "handling or use of (other than by an Insured) or the existence of any condition in an aircraft when such aircraft product . . . is not in the possession of the Insured, and . . . is away from the premises owned, rented or controlled by the Insured." "Aircraft Products" are defined as:

> aircraft (including missiles or spacecraft and any ground support or control equipment used therewith), or any article furnished by the Insured and installed in aircraft or used in connection with aircraft or for spare parts for aircraft or tooling used for the manufacture thereof, including ground handling tools and equipment and also means training aids, instructions, manuals, blueprints, engineering or other data, and/or any article in respect of which engineering or other advice and/or services and/or labor have been given or supplied by the Insured relating to any aircraft or aircraft article.

The Aviation Products Policy also includes a merger clause, stating the written terms of the policy contain the parties' entire agreement: "By acceptance of this policy the Insured agrees that the statements in the Declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing directly between himself and the Company relating to this insurance."

A-0689-13T3

The CGL Aviation Insurance Policy provides coverage only for bodily injury resulting from the insured's "aviation operations," which are operations relating to the insured's aviation activities. Specifically, this policy states Catlin "will pay those sums that the Insured becomes legally obligated to pay as damages because of bodily injury . . . to which this insurance applies resulting from your aviation operations." Aviation operations are defined as "all operations arising from the ownership, maintenance or use of locations for aviation activities including that portion of the roads or other accesses that adjoin these locations. Aviation operations include all operations necessary or incidental to aviation activities."

The CGL Aviation Policy also contains a merger clause stating the policy contains the parties' entire agreement:

> This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by the Aviation Managers and made a party of this policy.

On April 17, 2013, Kyle Owens, the principal of Flight Light and Traffic Safety testified during a video deposition that Flight Light manufactures and distributes airport lighting and Traffic Safety manufactures and distributes traffic safety lighting. Owens further testified neither Flight Light nor

A-0689-13T3

Traffic Safety manufactured the crosswalk system involved in the underlying litigation; Traffic Safety manufactured the controller and an entity other than Traffic Safety manufactured the fixtures used in the street. Additionally, he noted the lighting fixtures used in the crosswalk lighting system sold by Traffic Safety are the same ones used by Flight Light for airports.

In Flight Light's commercial insurance application dated June 30, 2009, Flight Light was the only listed applicant, although Traffic Safety was listed as a subsidiary that uses Flight Light's employees. Traffic Safety was further identified as a company in which Flight Light had controlling stock, which provides "products for crosswalks at universities and other commercial buildings."

After limited discovery, Catlin moved for summary judgment. Following oral argument, Judge Joseph L. Rea granted the motion, rejecting defendants' argument that Catlin's policies provided coverage for the underlying claim. The judge found "no ambiguity at all" in the language of either policy and otherwise found no basis for coverage.

Judge Rea noted the Aviation Products Policy expressly states coverage applies only to aircraft products and found the plain language to require Catlin to insure only claims caused by

an occurrence "arising out of the product's hazard." The court continued:

> What's a product hazard? It means the handling or use other than by the insured or the existence of any condition is an aircraft product when such aircraft product is not in the possession of insured or is away from premises owned, rented or controlled by the insured.
>
> Then we get into what's an aircraft product. . . . [I]t tells you . . . [we are] going to cover this product under a certain type of occurrence. It has to be . . . an occurrence related to an aircraft product, that's clear on the face of it.

The court noted the aircraft product "has to be used in connection with [an] aircraft in order to qualify as an aircraft product" under the plain language of the policy.

Noting both policies apply to aviation operations, Judge Rea concluded the underlying action did not involve aviation operations because aviation operations are "operations necessary or incidental to aviation activities . . . [like] runways, not crosswalks." Accordingly, Judge Rea granted plaintiff's motion, finding Catlin "not obligated to defend or indemnify defendants . . . with respect to any of the claims asserted in the (underlying) action." Defendants filed a motion for reconsideration, which the court denied. This appeal followed.

II.

In an appeal from the grant of summary judgment, we review the decision de novo, Heyert v. Taddese, 431 N.J. Super. 388, 411 (App. Div. 2013), and utilize "'the same standard [of review] that governs the trial court.'" Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012) (alteration in original) (quoting Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010)). Thus, the evidence must be viewed "in the light most favorable to the non-moving party" and must be analyzed to determine "whether the moving party was entitled to judgment as a matter of law." Ibid. (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

Further, contract interpretation is "ordinarily a legal question for the court and may be decided on summary judgment unless there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation. . . ." Celanese Ltd. v. Essex Cnty. Improvement Auth., 404 N.J. Super. 514, 528 (App. Div. 2009) (citation and internal quotation marks omitted). Accordingly, the court interprets the terms of a contract, as a matter of law, "unless the meaning is both unclear and dependent on conflicting testimony." Ibid. (citation and internal quotation marks omitted).

Contracts are read as a whole "'in a fair and common sense manner.'" Porreca v. City of Millville, 419 N.J. Super. 212, 233 (App. Div. 2011) (quoting Hardy ex. rel. Dowdell v. Abdul-

Matin, 198 N.J. 95, 103 (2009)).  As such, "[a] contract should not be interpreted to render one of its terms meaningless." Ibid. (citation and internal quotation marks omitted).  The interpretation of contract terms is "decided by the court as a matter of law unless the meaning is both unclear and dependent on conflicting testimony."  Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 92 (App. Div. 2001).

Insurance contracts are considered "contracts of adhesion, [and] such policies are subject to special rules of interpretation."  Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537 (1990) (citing Meier v. New Jersey Life Ins. Co., 101 N.J. 597, 611 (1986).  We will often construe insurance policies liberally in favor of the insured so "that coverage is afforded 'to the full extent that any fair interpretation will allow.'" Ibid. (quoting Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482 (1961)).  Nevertheless, "[a]n insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled."  Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010); see also Zurich, supra, 210 N.J. at 525 (holding that generally, an insurance policy should be interpreted in accordance with the plain and ordinary meaning of its terms).  Therefore, a court must first decide if an ambiguity exists.

Ambiguity in a contract exists "'if the terms of the contract are susceptible to at least two reasonable alternative interpretations. . . . To determine the meaning of the terms of an agreement by the objective manifestations of the parties' intent, the terms of the contract must be given their 'plain and ordinary meaning.'" Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (alteration in original) (quoting Kaufman v. Provident Life and Cas. Ins. Co., 828 F. Supp. 275, 283 (D.N.J. 1992), aff'd, 993 F.2d 877 (3d Cir. 1993)). Therefore, in "interpreting a contract, a court must try to ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain." Celanese Ltd., supra, 404 N.J. Super. at 528. Indeed, the court should examine the document as a whole but, importantly, the "'court should not torture the language of [a contract] to create ambiguity.'" Nester, supra, 301 N.J. Super. at 210 (alteration in original) (quoting Stiefel v. Bayly, Martin & Fay, Inc., 242 N.J. Super. 643, 651 (App. Div. 1990)).

It is only where a contract's language is ambiguous that a court may rely upon extrinsic or parol evidence to determine the intent of the parties; where the language of the contract is clear, extrinsic evidence may not be considered. Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)

A-0689-13T3

("If the language is clear, that is the end of the inquiry."); see also Schor v. FMS Financial Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (holding if language in the contract is "not free from doubt as to its meaning, the party is permitted to introduce proof of extrinsic circumstances bearing on the alleged proper interpretation of the language used"). Further, the parol evidence rule "operates to prohibit the introduction of oral promises to alter or vary an integrated written instrument." Filmlife, Inc. v. Mal "Z" Ena, Inc., 251 N.J. Super. 570, 573 (App. Div. 1991).

This tenant is especially true when the agreement itself contains an integration clause. Harker v. McKissock, 12 N.J. 310, 321-22 (1953) ("The essence of voluntary integration is the intentional reduction of the act to a single memorial; and where such is the case the law deems the writing to be the sole and indisputable repository of the intention of the parties."). However, "when considering ambiguities and construing a policy, courts cannot 'write for the insured a better policy of insurance than the one purchased.'" Flomerfelt, supra, 202 N.J. at 441 (quoting Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529 (1989)); see also Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 273 (2001) (finding "absence of an ambiguity in the language of an insurance policy, a court should not engage in a strained construction to support the imposition

of liability"). Finally, "the insured has the burden 'to bring the claim within the basic terms of the policy.'" S.T. Hudson Eng'rs, Inc. v. Pa. Nat'l Mut. Cas. Co., 388 N.J. Super. 592, 603 (App. Div. 2006) (quoting Reliance Ins. Co. v. Armstrong World Indus., Inc., 292 N.J. Super. 365, 377 (App. Div. 1996)), certif. denied, 189 N.J. 647 (2007).

III.

Defendants argue they are entitled to coverage under Catlin's insurance policies, claiming they are ambiguous on their face. We disagree.

Because insurance policies should be enforced as written where contract terms are clear and unambiguous, and because we discern no room for interpretation, we conclude Judge Rea correctly interpreted the language of the Aviation Products Policy as only covering aircraft-related products, and not the crosswalk lighting system at issue here. See Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960); B.D. v. Div. of Med. Assistance & Health Servs., 397 N.J. Super. 384, 391 (App. Div. 2007); see also Great Atl. & Pac. Tea Co., Inc. v. Checchio, 335 N.J. Super. 495, 502 (App. Div. 2000) (Construction of a written contract normally presents a legal question, but where there is "uncertainty, ambiguity or the need for parol evidence in aid of interpretation, then the doubtful provision should be left to the jury.").

13                                                        A-0689-13T3

The Aviation Products Policy provides Flight Light with coverage for bodily injury caused by a "product hazard" in its "aircraft products." Based upon the definitions provided in the insurance policy, this plainly means plaintiff will defend and indemnify Flight Light for any claims of bodily injury arising from the handling or use of Flight Light's "aircraft products." Aircraft products are "any article(s) furnished by the Insured and installed in aircraft or used in connection with aircraft . . . ." Therefore, according to the plain language of the policy, Catlin insured Flight Light for injuries arising from aircraft products installed on an aircraft or used in connection with an aircraft.

Here, the complaint in the underlying action described the System as a "pedestrian crossway lighting system consisting in part of flashing lights embedded in the subject crosswalks and pedestrian activation control stanchions." The System cannot be considered an "aircraft product" within the meaning of the Aviation Products Policy because it is completely unrelated to an aircraft. Instead, the product at issue was used in a crosswalk on a borough street rather than in connection with an aircraft or aircraft application.

Therefore, inasmuch as the product giving rise to the claims in the underlying action is not an "aircraft product," the claims arising from this product are not covered by the

A-0689-13T3

Aviation Products Policy. Accepting defendants' interpretation of the policy would rewrite the policy to afford more coverage than originally intended. See Flomerfelt, supra, 202 N.J. at 441.

We next consider defendants' assertion the CGL Aviation Policy is also ambiguous. While defendants have failed to articulate why we should find coverage under the CGL Aviation Policy, it is clear the terms of the CGL Aviation Policy are unambiguous and do not provide coverage for the underlying claim. According to the plain language of the Coverages/Insuring Agreement section of the CGL Aviation Policy, Catlin will provide coverage for "bodily injury or property to which this insurance applies resulting from [Flight Light's] aviation operations[,]" which is defined as "all operations necessary or incidental to aviation activities," including "all operations arising from the ownership, maintenance, or use of locations for aviation activities . . . ." Thus, the policy clearly requires some connection between the underlying claim and "aviation." The record contains no evidence of such a connection.

Here, the claims in the underlying action involve personal injuries sustained in an automobile accident at a downtown suburban crosswalk. As such, there is no reasonable connection between the claims in the underlying action and "aviation

15                                                    A-0689-13T3

operations" as defined in the policy that could trigger coverage. Therefore, based upon the unambiguous language of the CGL Aviation policy, it is clear the claims against defendants in the underlying action are not covered by the CGL Aviation Policy.

Finally, we reject defendants' claim that Judge Rea erred by failing to consider probative, extrinsic evidence. We note the "distinction between the use of evidence of extrinsic circumstances to illuminate the meaning of a written contract, which is proper, and the forbidden use of parol evidence to vary or contradict the acknowledged terms of an integrated contract." YA Global Inv., L.P. v. Cliff, 419 N.J. Super. 1, 12 (App. Div. 2011) (quoting Garden State Plaza Corp. v. S. S. Kresge Co., 78 N.J. Super. 485, 497 (App. Div. 1963)). Defendants' proffered parol evidence, including the deposition testimony of its principal and a certification of its insurance agent, was not presented to illuminate the meaning of Catlin's insurance policies but rather to vary and contradict the plain language of the policies. Finally, where a contract includes a merger clause, as both policies here, such a clause is meant to reflect the full intention of the parties. See Harker, supra, 12 N.J. at 321-22. Therefore, we conclude Judge Rea correctly interpreted the plain language of the policy in granting Catlin's motion for summary judgment.

A-0689-13T3

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0689-13T3