**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0813-24

ARI GANCHROW,

    Plaintiff-Appellant,

v.

SUEZ, SUEZ WATER NEW
JERSEY, INC., VEOLIA WATER
TECHNOLOGIES & SOLUTIONS
and TOWNSHIP OF TEANECK,

    Defendants-Respondents.

_____

Argued January 20, 2026 – Decided April 9, 2026

Before Judges Natali, Walcott-Henderson, and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5437-22.

Joseph M. Cerra argued the cause for appellant (Lynch Law Firm, PC, attorneys; Joseph M. Cerra and Neil S. Weiner, on the briefs).

Alexander G. Pappas argued the cause for respondent Veolia Water New Jersey, Inc. (Rivkin Radler LLP,

attorneys; Brian R. Ade and Alexander G. Pappas, on the brief).

PER CURIAM

Plaintiff Ari Ganchrow appeals from a Law Division order granting summary judgment to defendant Veolia Water New Jersey, Inc.[1] and dismissing plaintiff's complaint. Plaintiff alleged defendant was negligent for failing to take appropriate measures to remediate ice that formed on a crosswalk on a public roadway that resulted from a water discharge from defendant's broken water main causing him to slip and fall, incurring serious injuries. Based on our review of the record and application of the relevant legal principles, we vacate the order granting summary judgment to defendant and remand for further proceedings consistent with this opinion.

I.

Defendant is a privately owned, regulated water utility providing water services to over 750,000 customers, primarily in Bergen and Hudson Counties. The New Jersey Board of Public Utilities ("NJBPU") regulates defendant. Furthermore, the New Jersey Department of Environmental Protection

---

[1] We reference Veolia Water New Jersey, Inc. as defendant herein, formerly known as Suez Water New Jersey, Inc. and improperly pled as Veolia Water Technologies & Solutions.

2

("NJDEP") regulates and oversees all public utility water distribution systems. The NJDEP requires the operators of water distribution systems and water treatment facilities to be licensed.

On January 14, 2022, at approximately 10:00 p.m. the Teaneck Police Department ("TPD") notified defendant of an outflow in the roadway from a possible water pipe break near 502 Grenville Avenue in Teaneck. Later, at 12:13 a.m. on January 15, defendant's inspector Timothy Leahy was dispatched to investigate the leak. Inspector Leahy scanned the area and used a ground mic to identify the leak that was determined to be from a 6-inch water main. The underground water main that broke was beneath the intersection of Grenville and Wellington Circle. Defendant requested traffic control from TPD. Inspector Leahy isolated the leak by shutting down network valves and the matter was then referred to the defendant's construction department that placed the main out of service by 3:24 a.m.

Plaintiff alleges water had been flowing down the roadway for over five hours. At 4:26 a.m. defendant's construction crew completed excavation and repair, then at approximately 5:00 a.m., the main was placed back in service, and by 5:30 a.m. traffic control concluded. At the time of the water main break, the temperature was hovering near zero degrees. Defendant's discovery

3

responses disclosed it is common procedure for repair crews to apply salt in the area they had worked, but one of defendant's crew members that worked on the subject repair later testified that he could not remember if they had salted the area that night.

At approximately 8:00 a.m. on the morning of January 15, 2022, plaintiff walked from his house to Temple Bnai Yeshurun to attend morning services that began at 8:30 a.m. Also, around this time, TPD notified the Teaneck Department of Public Works ("TDPW") concerning a citizen's complaint regarding an icy condition at the intersection of Grenville Avenue and Hudson Road that required treatment. Around 9:00 a.m., Frank Spector of the TDPW was dispatched to apply salt on ice that had formed in the area of the intersection. Between 9:00 a.m. and 9:15 a.m., Spector operated a TDPW salting truck to spread calcium chloride over the intersection of Hudson Road and Grenville Avenue. Spector testified he only recalled applying salt to the immediate area of the complaint and did not treat any other area for ice.

At approximately 11:30 a.m., plaintiff left the Temple and commenced his walk back to his home. As plaintiff was walking east on Grenville Avenue, just before reaching the southeast corner of the intersection with Hudson Road, he slipped and fell allegedly due to the roadway's icy condition, striking his head.

4

As a result of the fall, plaintiff sustained a subdural hematoma requiring a neurosurgeon to perform emergency surgery. Plaintiff alleges he suffers from permanent traumatic brain injury as a result of the fall.

Plaintiff filed a complaint against defendant and the Township of Teaneck ("Teaneck") on October 6, 2022, and an amended complaint on January 10, 2023. Defendant filed its answer to the amended complaint denying liability and asserting a cross-claim against Teaneck.

Although there are no photographs of the accident location that represent the condition of the roadway at the time of the incident, during discovery, plaintiff provided four photographs of the location, which were taken by his wife the following day. Plaintiff testified he was unaware of any eyewitnesses to the incident and did not recall the incident. Discovery revealed that there were four individuals walking behind plaintiff who had attended the same services and found him lying on the roadway.

Plaintiff did not produce a liability expert, nor an expert to opine that defendant's salting of the road was negligent or inadequate. Instead, plaintiff produced a "water flow" report prepared by a civil engineer, Harry Dales, P.E., which addressed whether the water that discharged from defendant's water main breakage was the source of the ice on the roadway that caused plaintiff's fall.

5

According to the report, the distance between the main break and the accident location was approximately 617 feet. At his deposition, Dales testified he was not rendering an opinion regarding liability, and clarified that he was "offering expertise on the flow of the water down the road to the incident. That's it."

In August 2024, defendant moved for summary judgment and plaintiff opposed. In his opposition, plaintiff informed the court that at trial he would only pursue a liability theory that defendant acted negligently in failing to apply salt or otherwise remediate the dangerous ice condition on the roadway from the water that flowed from the broken water main before leaving the worksite that morning. Additionally, on September 27, 2024, Teaneck moved for summary judgment based on the protections afforded to it under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to :12-3 ("TCA").

On October 28, 2024, the court granted defendant's and Teaneck's motion for summary judgment and entered an order dismissing plaintiff's complaint with prejudice against both defendants. As to Teaneck, the court determined plaintiff had not provided expert proofs or any other proofs necessary to prove that Teaneck was negligent in its application of salt and treatment to the area, and plaintiff failed to show facts supporting that Teaneck's remediation of the ice was palpably unreasonable under the TCA.

A-0813-24

In its written decision on defendant's motion, the court found "[p]laintiff [had] no liability expert and [had] not identified any industry standards governing the duties of a regulated, public water utility with regard to any of the conduct for which he seeks to hold [defendant] liable." The court further stated that plaintiff asserted "that [defendant] was responsible for the icy condition which [p]laintiff alleges caused his fall," but failed to demonstrate that defendant had "actual or constructive notice of an icy condition at the Hudson-Grenville intersection." The court added that plaintiff had not identified a liability expert, did not produce a liability expert report and concluded "[p]laintiff cannot establish the essential elements of the tort of negligence: duty and a breach of that duty" without a qualified expert opinion.

The trial court's decision explained that expert opinion is required to establish a duty of care as to defendant and a breach of that duty, stating:

> The fact that people know that water freezes, salt can melt ice, and they may salt their own driveway, does not equate to knowledge and understanding of water utility operations in general, or water main repair procedures specifically. Jurors do not have experience with underground water main breaks or with emergency main break repairs . . . and the post-repair reporting, testing, and re-energizing of the main, service lines and fire hydrants. These are not matters of common knowledge and experience. Without an expert to explain how and when [defendant] should have known about the condition, and what it should have done in

7

response, the conclusion that [defendant] had a duty, breached that duty, and proximately caused [p]laintiff to fall, is speculation.

The court further determined Dales' expert report, which opined that water flowing from the main break was sufficient to reach the area where plaintiff fell, constituted a net opinion. Specifically, the court determined "Dales' water volume calculations are based upon four hypothetical equations, each equation predicated upon a different size main break," but he did not "know the actual size of the break." The court found Dales "uses break sizes of 1/8", 1/4", 1/2" and full circumferences," and the "key factor in his calculation of water volume is his estimation of a change in water pressure." The court determined that Dales' reliance on the "Standard Specifications" cited in his report were "from SUEZ Water New York Division 2021," which "have never been authenticated by SUEZ New [Jersey] as their standards." The court stated that "Dales printed [the specifications] off of the internet" and those standards "do not apply to Veolia Water New Jersey, Inc." because "[defendant] is a different corporate entity than [the New York entity]" and is "operate[d] in [a] different state[] and are regulated by different entities." The court determined "[defendant] is regulated by the [NJBPU] and the [NJDEP]."

A-0813-24

The court determined "Dales' conclusions are based upon a standard that does not apply to [defendant] and his calculations and conclusions regarding water volume are based on an inapplicable standard and are, therefore, inadmissible net opinions" because his "calculations and opinions are not based upon any regulation issued by either the NJBPU or NJDEP, New Jersey statute, Administrative Code provisions, or any New Jersey water utility standards." The court also found "Dales did not provide any certification, or affidavit subscribed by the custodian or other qualified witness charged with responsibility of maintaining the records, that the print-out was in fact, a certified copy of its Standards."

The court concluded:

> Dales' opinions as to water volume and water accumulation are net opinions and not the sort of competent evidential material that can be relied upon to create any genuine dispute as to whether ice accumulated on Grenville Avenue near the vicinity of the main break or formed on Grenville Avenue along the 600 feet between the break and Hudson-Grenville intersection.

The trial court also filed an amplification under Rule 2:5-1(d).[2] In its amplification, the court stated it granted defendant's motion for summary

---

[2] We considered the trial court's amplification over plaintiff's objection.

A-0813-24

judgment because (1) there was a lack of expert testimony; (2) there was no evidence of duty or breach; (3) there was a lack of evidence of the hazardous condition causation; (4) there was no notice; and (5) plaintiff's claims were based on speculation and a net opinion.

The amplification found plaintiff failed to produce a qualified liability expert to opine on the standard of care for a water utility in these circumstances or to support the claim that defendant should have taken additional salting operations. The court relied on our holding in <u>Fanning v. Town of Montclair</u>, 81 N.J. Super. 481 (App. Div. 1963). The court also clarified that defendant did not own, control, or maintain the roadway where plaintiff fell, nor had notice of the dangerous condition. Further, it found defendant's salting duty, if any, was limited to the immediate area of repair operations.

The court concluded plaintiff failed to provide the required expert opinion surrounding the applicable standard of care and proofs of defendant's breach of that standard of care. Moreover, the court found plaintiff's assertions that defendant had a duty to track and remediate water flows from the broken main hundreds of feet away were speculative and unsupported by law or evidence. The court further found the water flow report from plaintiff's expert was a net opinion reiterating the findings in its written decision.

A-0813-24

On appeal, plaintiff contends the court erred by: (1) determining that expert testimony was required because defendant's duty of care and breach of that duty were not so esoteric that an expert opinion was required and the breach of defendant's duty was within the common knowledge of jurors; (2) considering defendant's challenge to plaintiff's expert report related to water flow/runoff raised for the first time in defendant's reply, which denied plaintiff of due process; and (3) failing to hold a N.J.R.E. 104(a) hearing prior to barring plaintiff's water flow expert testimony as an impermissible net opinion.

II.

We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Like the motion judge, we view "'the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c).

A motion for summary judgment will not be defeated by bare conclusions lacking factual support, Petersen v. Twp. of Raritan, 418 N.J. Super. 125, 132

11

(App. Div. 2011), self-serving statements, Heyert v. Taddese, 431 N.J. Super. 388, 414 (App. Div. 2013), or disputed facts "of an insubstantial nature," Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:46-2 (2026). If "the evidence 'is so one-sided that one party must prevail as a matter of law,'" courts will "not hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

We initially address plaintiff's contention that the trial court erred by determining expert opinion was required to show a duty was owed by defendant and defendant breached that duty. "To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend, 221 N.J. at 51 (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). "A plaintiff bears the burden of establishing those elements 'by some competent proof.'" Ibid. (quoting Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014)).

"Whether, in a given context, 'a duty to exercise reasonable care to avoid the risk of harm to another exists is [a question] of fairness and policy that implicates many factors.'" Funtown Pier Amusements, Inc. v. Biscayne Ice Cream & Asundries, Inc., 477 N.J. Super. 499, 512 (App. Div. 2024) (alteration in original) cert. denied, 257 N.J. 408 (2024) (quoting Coleman v. Martinez, 247

12

N.J. 319, 337 (2021)). "[I]n all duty-of-care determinations, a 'court must first consider the foreseeability of harm to a potential plaintiff and then analyze whether accepted fairness and policy considerations support the imposition of a duty.'" Ibid. (alteration in original) (quoting Coleman, 247 N.J. at 337).

"In most negligence cases, the plaintiff is not required to establish the applicable standard of care." Davis, 219 N.J. at 406. Usually, "[i]t is sufficient for [the] plaintiff to show what the defendant did and what the circumstances were. The applicable standard of conduct is then supplied by the jury[,] which is competent to determine what precautions a reasonably prudent [person] in the position of defendant would have taken." Id. at 406-07 (alterations in original) (quoting Sanzari v. Rosenfeld, 34 N.J. 128, 134 (1961)). "Such cases involve facts about which 'a layperson's common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion.'" Id. at 407 (quoting Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996)).

"In some cases, however, the 'jury is not competent to supply the standard by which to measure the defendant's conduct,' and the plaintiff must instead 'establish the requisite standard of care and [the defendant's] deviation from that standard' by 'present[ing] reliable expert testimony on the subject.'" Ibid.

13

(alterations in original) (citations omitted); see also N.J.R.E. 702 (permitting expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue").

"The necessity of expert testimony is determined by the sound exercise of discretion by the trial judge." Maison v. NJ Transit Corp., 460 N.J. Super. 222, 232 (App. Div. 2019). "[W]hen deciding whether expert testimony is necessary, a court properly considers 'whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable.'" Davis, 219 N.J. at 407 (alteration in original) (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)); see also Hubbard v. Reed, 168 N.J. 387, 394 (2001) (holding expert testimony was not needed when the jury's "common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence" (quoting Est. of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469 (1999))).

On appeal, as in the trial court, plaintiff has limited his claims to only those arising from defendant's negligence for its "failure to abate the dangerous condition, imminent ice, formed by the waterflow from [defendant's] broken water main" that caused plaintiff to fall.

Plaintiff relies on our holding in Jacobs v. Jersey Cent. Power & Light Co., 452 N.J. Super. 494 (App. Div. 2017) to support its contention that the trial court erred by determining expert opinion was necessary to provide the applicable standard of care that applied to defendant and the factual support as to how defendant breached said standard. In Jacobs, we held the plaintiff was not required to present an expert witness on liability to opine about industry standards because whether defendant acted reasonably was within the common knowledge of laypersons and was capable of being decided by the jury without expert opinion. Id. at 508. Here, plaintiff argues defendant's duty, breach of that duty and standard of care related to defendant's failure to take measures to remediate the icy conditions caused by the water main breakage in the area where plaintiff fell does not require expert testimony because the standard of care applicable to defendant is not complicated or esoteric.

Defendant asserts the trial court was correct in relying on Fanning and contends that, because it is a regulated utility company, a jury cannot determine on its own whether it was negligent for its alleged failure to remediate ice in the roadway where plaintiff fell. Defendant asserts that it notified TPD of its need for traffic control and TPD provided those services during the time defendant was completing its work and that it paid for these services. Defendant argues

15

TPD subsequently notified TDPW of ice in the roadway at the Hudson-Grenville intersection and TDPW remediated the icy conditions on the roadway. Defendant further asserts Teaneck Ordinance, Article XIV Department of Public Works, Sec. 2-87 Division of Street Services sets forth the responsibility for remediation of ice formation on the public roadways to TDPW. The ordinance cited by defendant states:

> Within the Department of Public Works, there may be a Division of Street Services, whose functions, in conjunction with the Township Engineer (who shall be in charge if the law so requires) shall be to:
>
> (a) Maintain all Township streets in a clean and safe condition for travel, free of obstructions and hazards, and remove leaves, snow and ice therefrom as required. [Teaneck, N.J., Ordinance 44-2023 (Jan. 23, 2024).]
>
> [(Emphasis added).]

Defendant asserts TDPW dispatched Assistant Supervisor Frank Spector to salt the roadway at the Hudson-Grenville intersection and the overtime sheet for Spector reflects that, on January 15, 2022, he commenced his salting operation at 9:00 a.m. and ended it at 9:21 a.m. Defendant argues Spector testified at his deposition that he made two passes with the salt truck and spread the salt and calcium chloride on the roadway at the Hudson–Grenville intersection and that he did not see any ice at the location of the main break at

16

Wellington Circle. Defendant contends Spector admitted that it is TDPW's responsibility to remove and remediate ice from city streets for safe travel and that it was his job to treat ice on the roadway. Defendant argues Spector admitted he did not notify defendant that his treatment had concluded. Significantly, defendant asserts that Spector testified that the conditions depicted in photographs taken by plaintiff's wife on January 16, 2022 did not reflect the condition of the intersection at the time he treated it.

"In the negligence context, 'a duty is an obligation imposed by law requiring one party to conform to a particular standard of conduct toward another.'" Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 120 (App. Div. 2011) (quoting Acuna v. Turkish, 192 N.J. 399, 413 (2007)). "Whether a duty of care exists with respect to a particular plaintiff 'is generally a matter for a court to decide.'" Ibid. (quoting Acuna, 192 N.J. at 413). When analyzing whether a duty exists, the court looks to public policy and fairness, examining such factors as "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Ibid. (quoting Acuna, 192 N.J. at 414).

> The standard of care ordinarily imposed by negligence law is well established. To act non-negligently is to take reasonable precautions to prevent the occurrence of foreseeable harm to others. What precautions

A-0813-24

are "reasonable" depends upon the risk of harm involved and the practicability of preventing it. We ordinarily evaluate a defendant's conduct on the basis of what a "prudent man" would have done in defendant's circumstances.

The reasonableness of action in relation to foreseeable risks is an essentially objective determination to be made on the basis of the material facts. It is not, however, enough to ground liability in negligence to show that a defendant did not act with reasonable care, and that this carelessness caused injury. Plaintiff must also show that defendant owes him a duty of care.

[Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013) (internal citations omitted in original) (quoting Weinberg v. Dinger, 106 N.J. 469, 484-85 (1987)).]

Based on our review of the record, we conclude defendant had a duty of care to pedestrians such as plaintiff from the risk of injury that could be caused by slipping and falling on ice formed from water flowing from its main breakage. The imposition of a duty on a defendant water utility to take reasonable measures to take reasonable measures to remediate ice hazards on public roadways caused by water discharges of its water mains to avoid users of the roadways from being injured is fair and reasonable. We conclude it is not necessary for an expert to provide an opinion on defendant's duty in this instance because defendant clearly has a duty of care to pedestrians such as plaintiff to take measures to remediate ice formed on the roadways caused by it.

A-0813-24

We further determine that an expert is not required to provide any special opinion on the standard of care concerning defendant because it is a water utility. As we stated in Jacobs, "[b]asic principles of negligence law call for lay jurors to evaluate if a defendant's conduct was unreasonable." 452 N.J. Super. at 505 (citing Model Jury Charges (Civil), 5.10A, "Negligence and Ordinary Care" (approved before 1984)). "Those basic notions of reasonable behavior do not inexorably require an expert witness to testify about standards of care, particularly in cases . . . that do not involve suit against a licensed professional covered by the Affidavit of Merit statute, N.J.S.A. 2A:53A-26 to -29." Ibid.

> Negligence is the failure to use that degree of care, precaution, and vigilance which a reasonably prudent person would use under the same or similar circumstances. It includes both affirmative acts which a reasonably prudent person would not have done and the omission of acts or precautions which a reasonably prudent person would have done or taken in the circumstances.
>
> [Model Jury Charges (Civil), 5.10A, "Negligence and Ordinary Care" (rev. Oct. 2022).]

We recognize plaintiff has the burden to prove defendant's breach of a duty. Plaintiff asserts its burden was met by defendant's decision to "leave the worksite, without performing inspection and remediation activities, which

19

constituted a breach of its duty to persons utilizing the public roadways." We agree.

We further point out that defendant has not identified any particular code, policy, directives, or other proofs that generally set forth an applicable standard of care for utility companies regarding remediation of dangerous conditions caused by water discharging from its water mains onto public roadways. Nor has defendant produced any specific evidence of an agreement, written or otherwise, with Teaneck regarding their respective responsibilities for remediation of ice formed on the public roadways from water main breaks. Defendant also has not produced expert opinion identifying the distinct standard of care it asserts applies only to utility companies under these circumstances and the reasons defendant should not be held to an ordinary negligence standard of care, which would not require an expert. Defendant has also not proffered evidence so one sided as required in a motion for summary judgment to support it did not breach an ordinary standard of care for failure to remediate the ice that formed from its water main break. Nor has it produced indisputable evidence that its reporting of the break to TPD without further inspection, monitoring or treatment fulfilled its duty of care or that its duty of care was abrogated to Teaneck to remediate the icy condition on the roadway.

A-0813-24

As previously noted, defendant and the trial court relied on our holding in Fanning v. Town of Montclair, 81 N.J. Super. 481 (App. Div. 1963). In Fanning we "rejected plaintiff's theory of negligence against a water company because plaintiff failed to retain an expert to show some generally accepted standard to which the water company should be held." The court determined that plaintiff's claims required an expert to identify the "standard governing the water utility industry . . . which the court could use as a guide to determine the issue of duty" and that "[p]laintiff cannot meet th[e] burden of proof on the second element of the tort of negligence: breach of duty."

In Fanning, we held negligence claims by a homeowner against the municipality for damages to her home caused by a break in the municipality's water main, did not entitle the plaintiff to an inference that the break was the result of some negligence of the defendant based on res ipsa loquitor. Id. at 486. In that case we also determined the plaintiff's claims against the defendant alleging negligent inspection and maintenance of the water main required expert testimony as to the applicable standard of care and how defendant's maintenance and inspection of its water main fell short of generally accepted standards of care. Id. at 488.

We conclude the facts in <u>Fanning</u> are distinguishable from the facts before us. <u>Fanning</u> does not stand for the proposition that there is a "longstanding rule in New Jersey that allegation of negligence against a water utility operation must be supported by expert testimony" as found by the trial court. In this instance, unlike <u>Fanning</u>, plaintiff's claims do not relate to any duty or standard of care concerning whether a utility's policies for inspection and repair of underground water main lines were reasonable. The record shows that plaintiff abandoned his argument concerning negligent maintenance and inspection of the water main and limited his negligence claims to defendant's failure to take reasonable measures to remediate the icy condition on the crosswalk where plaintiff slipped and fell, despite being aware that water had flowed out of the broken water main and down the street toward the area where he allegedly fell.

We conclude, plaintiff's theory of recovery, is much simpler than plaintiff's claim in <u>Fanning</u>. Here, plaintiff must prove defendant was aware of the water main break; knew, or with reasonable diligence, should have known that water was flowing down the street towards the area where he fell and would likely freeze due to the sub-freezing temperatures; it was foreseeable that persons walking on a crosswalk on those streets could slip and fall on the ice formed by the water main breakage; defendant had a duty to take reasonable

22

measures to remediate the icy conditions it left on the streets prior to leaving the site; defendant breached that duty by leaving the area before remediating the ice or by taking reasonable measures to entrust the remediation to Teaneck; and that the ice left by defendant on the crosswalk was a proximate cause of plaintiff's fall and injuries. We conclude whether defendant breached this standard of ordinary care is not so complicated or esoteric that an expert opinion is required to set out a special standard of care applicable to water utilities only. A fact-finder jury is capable of determining whether defendant breached this duty of ordinary care using their own common knowledge.

On this record, we therefore conclude plaintiff's claim is one of general negligence where ordinary care applies to defendant and expert testimony is not required to establish a special duty of care or the appropriate standard of care defendant should be measured due to its status as a water utility. The trial court improvidently determined that plaintiff's claims required expert opinion to identify industry standards governing the duties of defendant to the extent it was a regulated, public water utility. In this instance, plaintiff's claim that defendant breached an ordinary standard of care by not taking reasonable measures to remediate the icy conditions of the roadway caused by its water main break where plaintiff fell, is not so complicated or esoteric that would require expert

23

opinion and testimony. On these facts, it was foreseeable that the ice formed from the water main breakage could cause injury to pedestrians walking on the crosswalk. When evaluating the legal tenets for an imposition of a duty on a defendant, we determine it is not unreasonable or unfair for an ordinary duty to apply to defendant and to impose a standard of ordinary care to take reasonable measures to remediate ice caused by its water main breakage for the safety of persons using the roadways.

Whether defendant can produce contrary evidence that its actions were reasonable by limiting its inspection and remediation of the ice formed in the area of the break, by notifying Teaneck to remediate the icy conditions where plaintiff fell without any further inspection, and that Teaneck appropriately remediated the icy conditions, should be left to a jury determination. We make no determination whether defendant's failure to remediate the ice near the plaintiff's fall approximately 600 feet away from the breakage or its notification to Teaneck, which it assumed would remediate the ice, was reasonable. We conclude the trial court had an insufficient basis to find otherwise in its decision because issues as to the reasonableness of defendant in remediating only the ice formed at the immediate work site is a jury question. Whether defendant can prove it properly abrogated its duty to Teaneck to remediate the ice where

24

plaintiff fell or by some other policy or reason is left to defendant's proofs at trial. We further conclude that factual issues exist as to whether Teaneck's ordinance cited by defendant imposed a duty only on Teaneck to remediate the ice caused by defendant's water main break under these circumstances because issues of material fact exist in the record that the ice on the crosswalk in this instance was caused by defendant and not formed by weather conditions. We note, requirements in an ordinance may be evidentiary, but are not dispositive concerning whether an entity is negligent. See Labega v. Joshi, 470 N.J. Super. 472, 491 (App. Div. 2022) (stating the general rule in this State is that "the violation of a statute [or ordinance] . . . is evidence which may be considered by a jury together with all of the evidence in determining issues of negligence or contributory[, now comparative] negligence.").

## III.

We now turn to plaintiff's contention that the trial court erred by considering defendant's net opinion argument raised for the first time in its reply submission. Plaintiff asserts the court's consideration on reply was inappropriate because the net opinion argument was not asserted in defendant's original summary judgment motion or its statement of material facts. Plaintiff

25

claims this violated his due process rights because he had no reasonable opportunity to respond to this argument.

Defendant contends it referenced Dales' expert report in its motion for summary judgment to show plaintiff did not provide the necessary liability expert opinion and its reply merely responded to plaintiff's opposition arguing Dales' report showed defendant had notice that the water main discharge froze after it flowed approximately 600 feet downhill and caused plaintiff to slip and fall.

Due process requires "that a party in a judicial hearing receive 'notice defining the issues and an adequate opportunity to prepare and respond.'" H.E.S. v. J.C.S., 175 N.J. 309, 321 (2003) (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993)).

> Rule 4:46-1 states:
>
> All motions for summary judgment shall be . . . filed not later than 28 days before the time specified for the return date; opposing affidavits, certifications, briefs, and cross-motions for summary judgment, if any, shall be served and filed not later than 10 days before the return date; and answers or responses to such opposing papers or to cross-motions shall be served and filed not later than four days before the return date. No other papers may be filed without leave of court.
>
> [(emphasis added).]

A-0813-24

The record does not indicate plaintiff requested and the trial court denied leave for him to file a sur-reply to address the net opinion issue he claims was improperly raised by defendant's reply. See R. 1:6-3(a). On this record, we conclude plaintiff was provided a fair opportunity to address this issue. We determine there was no error by the court in addressing the net opinion arguments in the context of the motion proceedings as both parties had sufficient opportunity to provide their respective positions. In addition, plaintiff failed to request leave to file a sur-reply to further address this issue, which indicates his satisfaction with the arguments set forth in his opposition.

IV.

We now turn to plaintiff's contention that the court erred by not holding a N.J.R.E. 104 hearing regarding Dales' expert opinion prior to determining it was a net opinion.

Rule 104 states:

(a) In General.

(1) The court shall decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege and Rule 403.

(2) The court may hear and determine such matters out of the presence or hearing of the jury.

27

The decision whether to hold a Rule 104 hearing is within the sound discretion of the trial court. Kemp v. State, 174 N.J. 412, 428 (2002). "Absent a clear abuse of discretion, an appellate court will not interfere with the exercise of that discretion." Carey v. Lovett, 132 N.J. 44, 64 (1993) (citing Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 411 (1960)).

"[O]rdinarily the best practice would be for a trial judge to permit the examination of the scope of an expert's opinion—when its admissibility is challenged—at a pretrial N.J.R.E. 104(a) hearing." Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC, 450 N.J. Super. 1, 100 n.50 (App. Div. 2017) (citing Kemp v. State, 174 N.J. 412, 432 (2002)). Because an expert may testify at a hearing to "the logical predicates for and conclusions from statements made in [a] report[,]" McCalla v. Harnischfeger Corp., 215 N.J. Super. 160, 171 (App. Div. 1987), courts must remain mindful of the Supreme Court's caution against barring an expert report, particularly if doing so will be dispositive of a case, when the expert has not had the opportunity to explain his opinions through testimony. See Kemp, 174 N.J. at 432-33 (stating that when "the court's ruling on admissibility may be dispositive of the merits, the sounder practice is to afford the proponent of the expert's opinion an opportunity to prove its admissibility at a Rule 104 hearing").

A-0813-24

The Rule 104 hearing allows the court to assess whether the expert's opinion is based on scientifically sound reasoning or unsubstantiated personal beliefs . . . . [During the hearing], an expert must be able to identify the factual basis for his conclusion, explain his methodology, and demonstrate that both the factual basis and underlying methodology are scientifically reliable.

[Id. at 427 (citations omitted).]

"The court's role is to 'determine whether the expert's opinion is derived from a sound and well-founded methodology that is supported by some expert consensus in the appropriate field.'" Ibid. (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)).

Based on our review of the record, specifically Dales' report and deposition testimony, we part ways with the court's determination that sufficient facts existed in the record to bar Dales' opinion before holding a Rule 104 hearing. Dales is a civil engineer. In his deposition testimony, Dales clearly stated that he was not providing an opinion on liability, and his report was solely to provide an opinion as to whether the water discharging from the water main break was capable of flowing to the area where plaintiff asserts he slipped and fell. Dales' report was a direct response to defendant's representative Deirdre O'Shea's deposition testimony, wherein she opined that the ice at the incident location was not from the water main break because it was over 500 feet away.

29

Defendant had offered her testimony on the issue of causation, which is a necessary element of a negligence claim.

Plaintiff's expert report, in summary, opined the water main break occurred at the intersection of Grenville and Wellington Avenues and the water escaping from the six-inch diameter water main traveled down the roadway that "sloped on a downgrade from the location of the water main break toward the incident location." The report calculated various rates of flow of water from the "6 [inch] diameter water main" during the time that passed from the point of the breakage to the accident site to conclude the ice at the site was from the breakage. The report also relied upon the weather report of the meteorologist from "CompuWeather" for the Teaneck area on January 14 and 15, 2022 wherein he stated the area did not include any precipitation, snow or ice. The meteorologist's report relied on by Dales opined "with[in] a reasonable degree of meteorological certainty that on January 15, 2022, no snow or ice accumulated at Grenville [and] Hudson Road, Teaneck . . . [and] there was no preexisting snow or ice cover."

Dales' report concluded:

> Under the conditions discussed above, and contrary to the testimony of [defendant's representative] Dierdre O'Shea, the estimated volume of water generated from the 6" diameter water main break that occurred on

30

January 14 and 15 of 2022 would have reached the incident location on Hudson Road, near the southeast corner of the intersection of Grenville Avenue and Hudson Road."

The trial court determined Dales' opinion relied on "a standard that does not apply to [defendant] and his calculations and conclusions regarding water volume are based on an inapplicable standard and are, therefore, inadmissible net opinions." Essentially, the court found Dales' use of data from a water utility operating in New York was unreliable for the water main in question located in New Jersey.

We determine there were unanswered questions dispositive to causation contained in Dales' testimony and report, necessitating a Rule 104 hearing to permit Dales to testify, clarify and explain the basis of his opinion prior to the court's conclusion the opinion should be barred.[3] Dales' report, on its face, provides that a break of a six-inch diameter water main results in a discharge of sufficient volumes of water over a period of 4-5 hours that was capable of flowing over 500 feet on the downhill slope of the street. Additionally, the report offered a number of different calculations based on various pipe diameters

_____

[3] The record does not include information or proofs that defendant filed a separate motion in limine or other affirmative application to bar Dales' expert report.

and water pressure scenarios to support his opinion. Under these circumstances, we conclude a deeper exploration of the basis of Dales' opinion was necessary through a Rule 104 hearing before concluding the report was a net opinion. In this instance, the court misapplied its discretion by barring the report and opinion, as part of a motion for summary judgment that relied on a distinctly different legal basis, without affording plaintiff the opportunity for Dales' to clarify and expound on the reliability of his opinion.

V.

We now address plaintiff's challenge to the court's determination in support of its granting of summary judgment that defendant did not have notice of the icy conditions on the crosswalk where plaintiff fell.

In ordinary premises liability actions, the notice requirement is not applicable if a plaintiff demonstrates that the defendant created the hazardous condition. See Craggan v. Ikea USA, 332 N.J. Super. 53, 61 (App. Div. 2000); see also Smith v. First Nat'l Stores, Inc., 94 N.J. Super. 462, 466 (App. Div. 1967) ("Notice, either actual or constructive, is not required where a defendant . . . creates a dangerous condition."); Model Jury Charges (Civil), 5.20F(9), "Duty Owed – Condition of Premises" ("Notice not required when condition is caused by defendant.") (rev. Nov. 2022).

Here, plaintiff contends defendant created the unsafe ice condition on the crosswalk that caused his injuries. We conclude genuine issues of material fact existed surrounding defendant's creation of the icy conditions at the location of plaintiff's fall that could obviate plaintiff's burden to prove notice. There is sufficient evidence in the record that defendant's water main broke causing water to flow onto the public streets in the area where plaintiff fell, which created genuine issues that defendant caused the icy condition on the crosswalk that precluded the grant of summary judgment based on lack of notice.

The final issue we address concerns the trial court's determination in its amplification that there was a lack of evidence of a hazardous condition because plaintiff could not identify with certainty where he fell or what caused his fall and the only evidence was unverified photographs taken after the fact.

We reiterate, Rule 4:46-2 requires the evidential materials presented in the motion record to be viewed in the light most favorable to the non-moving party and whether the record contains sufficient factual disputes that would permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. "The 'essence of the inquiry' is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Mayo, Lynch &

A-0813-24

Assocs., Inc. v. Pollack, 351 N.J. Super. 486, 494-95 (App. Div. 2002) (quoting Brill, 142 N.J. at 536).

Applying the above standard, the record shows plaintiff was found lying on the street unconscious by four individuals who were walking behind him after they attended the same religious services as plaintiff. The photographs taken by plaintiff's wife, although taken the next day, showed ice on the street, which we conclude, when taken in a light most favorable to plaintiff, shows the icy conditions were present within 24 hours after plaintiff's fall. When viewed under the standards of Rule 4:46-2, and providing plaintiff all favorable inferences, the icy conditions in the photographs support that the ice was on the crosswalk at the time of plaintiff's fall. Also, Spector's testimony that the street was not in the condition depicted in the pictures on the date he treated it creates issues of fact for a jury to decide and was not dispositive of this issue. Since the record contains genuine issues of disputed facts concerning the existence of the icy conditions of the roadway at the time plaintiff asserts he fell, the grant of summary judgment based on plaintiff's failure to provide direct proofs that he slipped on ice at the location and time he claims was inappropriate.

A-0813-24

To the extent we have not addressed any of plaintiff's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division